**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**ADAM KEALEY**
**Plaintiff,**

**v.** **Case No. 25-C-1361**

**FRANK BISIGNANO,**
**Commissioner of the Social Security Administration**
**Defendant.**

---

## DECISION AND ORDER

Plaintiff Adam Kealey seeks judicial review of the denial of his application for social security disability benefits. For the reasons that follow, I affirm the denial and dismiss this action.

## I. FACTS AND BACKGROUND

### A. Plaintiff's Application and Agency Decisions

Plaintiff applied for benefits in September 2022, alleging a disability onset date of June 20, 2021, based on chronic fatigue, nerve pain, morbid obesity, irritable bowel syndrome, gastroesophageal reflux disease (GERD), lumbar facet joint pain, emotional stress syndrome, sleep apnea, fibromyalgia, and low testosterone. (Tr. at 204, 322, 346.) In a function report, plaintiff alleged that he was home-bound, sometimes bedridden, with no social life. (Tr. at 364.) He reported that his impairments made bathing and other personal care tasks difficult. (Tr. at 365.) He cooked quick, easy meals and did house and yard work with difficulty. (Tr. at 366.) He rarely went out but could drive a car. He could also handle money. (Tr. at 367.) He alleged that his impairments affected virtually every activity listed on the report. (Tr. at 369.) He stated

that he used a cart as a walker when shopping and leaned on walls or rails to avoid falls. (Tr. at 370.) In a later function report, plaintiff alleged mental limitations, light sensitivity, fatigue, and cognitive decline. (Tr. at 381.) He reported that friends and family helped with house work. (Tr at 383.) Finally, he reported using a cane during flare-ups and a walker when shopping or walking more than five minutes. (Tr. at 387.)

The agency denied the application at the initial level (Tr. at 214, 245) based on the review of Benjamin Cortijo, M.D., who found plaintiff capable of light work (occasionally lifting 20 pounds, frequently lifting 10 pounds), standing/walking four hours in an eight-hour workday, sitting about six hours in an eight-hour workday, with occasional climbing and postural movements (Tr. at 210-11), and Susan Donahoo, Psy.D., who found no or mild mental limitations (Tr. at 209-10). Plaintiff requested reconsideration (Tr. at 254), but the agency maintained the denial (Tr. at 226, 257) based on the review of Jason Kocina, Psy.D., who found mild mental limitations (Tr. at 231), and William Staehle, M.D., who agreed with Dr. Cortijo (Tr. at 232-33).

Plaintiff then requested a hearing before an Administrative Law Judge (ALJ). Prior to the hearing, he submitted an August 1, 2024, a functional capacity evaluation (FCE) from Cooper Witt, PT, DPT. (Tr. at 151.) At the evaluation, plaintiff reported having pain everywhere, worsened by any movement. He further reported not being able to work since 2019. He had filed for social security once in the past and was denied; he had been trying to appeal since then and requested this FCE to assist in his appeal. (Tr. at 1464.) During the exam, plaintiff reported severe pain increases, which severely limited all testing, including decreasing movement speed, audible groans, and worsening balance in response to pain. Witt noted that plaintiff had not been working, so the results should be interpreted in regard to daily function

as that was the only available comparison. Plaintiff demonstrated severe functional limitations across all testing except sitting. (Tr. at 152; see also Tr. at 1457-64, 1517-23, 1568-75.)

**B. Hearing**

On September 17, 2024, plaintiff appeared in person for his hearing before the ALJ. The ALJ also called a vocational expert (VE) to offer testimony on jobs plaintiff might be able to do. (Tr. at 30, 32-33.) At the outset of the hearing, the ALJ reviewed plaintiff's right to representation and confirmed that plaintiff understood and wished to proceed pro se. (Tr. at 34-35.)

Plaintiff testified that he stood 6' tall and weighed 310 pounds. He lived alone in the lower level of a duplex. He had an associate's degree in finance (Tr. at 38) and last worked in 2019 taking customer calls at Charter Communications, a sedentary job (Tr. at 39-40).

Plaintiff testified that he could not work due to multiple complex conditions, including fibromyalgia and muscle fatigue. Until recently, when he received a new inhaler, he also suffered from a severe respiratory disorder. (Tr. at 40.) Plaintiff stated that he experienced widespread pain in all parts of his body. (Tr. at 40-41.) The pain worsened with any activity and improved with 12 hours or more of rest. He received medications and infusions, which mitigated the pain, and recently started dry needling. (Tr. at 41.)

Plaintiff testified that could stand for a couple minutes, walk about 30 feet, and comfortably lift a couple pounds. (Tr. at 41-42.) On a typical day, he got up, took medications, watched TV, napped, and ate. (Tr. at 43.) He leaned on the wall for support while showering and cooked microwave meals. He did not do household chores and received help with cleaning and laundry from family. He shopped once or twice a month and could drive short distances. (Tr. at 44.)

The VE classified plaintiff's past work as "customer service representative," a skilled and sedentary job. (Tr. at 51.) The ALJ then asked a hypothetical question, assuming a person of plaintiff's age, education and experience, limited to light work, occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling, never climbing ladders, ropes or scaffolds, frequently handling and fingering with the bilateral upper extremities, frequently pushing, pulling or operating foot controls with the bilateral lower extremities, and avoiding unprotected heights and dangerous moving machinery. (Tr. at 52.) The VE testified such a person could perform plaintiff's past work and other jobs such as marker, routing clerk, and fastener. (Tr. at 52.) Adding a limitation to standing and/or walking a total of four hours in an eight-hour workday, the person could still do plaintiff's past work, as well as other jobs, including fastener, order caller, and small products assembler. (Tr. at 53.) Finally, with a limitation to sedentary work, the person could do plaintiff's past work and other jobs such as call out operator, information clerk, and sorter. (Tr. at 54-55.)

**C. ALJ's Decision**

On November 27, 2024, the ALJ issued an unfavorable decision (Tr. at 9), following the required five-step process for determining disability (Tr. at 12-14).[1] At step one, the ALJ

---

[1]At step one, the ALJ asks whether the claimant is engaging in "substantial gainful activity." If not, then step two asks whether the claimant has a "severe" mental or physical impairment. If yes, then at step three the ALJ decides whether the claimant's condition meets or equals the severity of one of the presumptively disabling impairments listed in the regulations. If no Listing applies, then before proceeding to step four, the ALJ ascertains the claimant's "residual functional capacity" (RFC)—the maximum work that someone seeking benefits can sustain doing in light of their impairments. With the benefit of the RFC, the ALJ moves to step four, which requires the ALJ to deny benefits if a claimant with the described RFC is capable of performing his past relevant work. If not, the ALJ moves to step five, determining whether there are a significant number of other jobs in the national economy that a claimant could perform, given his RFC, age, education, and work experience. Poole v. Kijakazi, 28 F.4th 792, 794 (7th Cir. 2022).

determined that plaintiff had not engaged in substantial gainful activity since June 20, 2021, the alleged onset date. (Tr. at 15.) At step two, the ALJ found that plaintiff had the severe impairments of fibromyalgia, degenerative disc disease of the cervical and lumbar spine, obstructive sleep apnea, and obesity. (Tr. at 15.) The record contained references to other impairments, e.g., GERD, right common extensor tendon strain, chronic sinusitis, hearing loss in the left ear, hypogonadism, and adrenal insufficiency, but the record showed these impairments were managed medically and caused no more than minimal limitation on plaintiff's ability to perform basic work functions. (Tr. at 15.) The ALJ also found plaintiff's mental impairments non-severe, causing only mild limitations. (Tr. at 16.) At step three, the ALJ determined that none of plaintiff's impairments met or equaled a Listing. (Tr. at 17-18.)

Prior to step four, the ALJ found that plaintiff had the RFC to perform light work, except that he could stand and/or walk for a total of four hours in an eight-hour workday; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; frequently handle and finger with the bilateral upper extremities; frequently push, pull, or operate foot controls with the bilateral lower extremities; and must avoid unprotected heights and dangerous moving machinery. (Tr. at 18.) In making this finding, the ALJ considered plaintiff's alleged symptoms and the medical opinion evidence. (Tr. at 18.)

In evaluating plaintiff's symptoms, the ALJ acknowledged the two-step process set out in the regulations, under which it must first be determined whether the claimant has an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptoms. Second, once such an impairment has been shown, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. (Tr.

at 18.)

Plaintiff alleged that his impairments affected his ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, hear, climb stairs, see, remember, complete tasks, concentrate, understand, follow instructions, use his hands, handle stress, and handle changes in routine. He also asserted a compromised ability to tend to his activities of daily living, such as taking care of his personal care needs, preparing some meals, doing some housework, shopping, and engaging in social activities, hobbies or other interests. At the hearing, plaintiff testified to widespread pain in all parts of his body, exacerbated by activity and improved by 12 hours or more of rest. (Tr. at 18.) He further testified he could stand for a couple minutes, walk for 30 feet, and comfortably lift a couple pounds. (Tr. at 18-19.)

The ALJ reviewed the medical evidence, which documented plaintiff's medical impairments and complaints, treated with physical and occupational therapy, dry needling, injections, infusion therapy, pool therapy, medications, and following with specialists. (Tr. at 19.) The record also documented plaintiff's obesity, with a BMI over 40; the ALJ acknowledged that obesity could exacerbate the pain and limitation associated with spinal impairments and limit a person's ability to sustain regular activity. (Tr. at 19-20.)

The ALJ concluded that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, the ALJ found that plaintiff's statements concerning the intensity, persistence, and degree of limitation associated with these symptoms could not reasonably be accepted as consistent with the medical evidence and other evidence in the record. (Tr. at 20.)

In support of this finding, the ALJ noted that while diagnostic imaging of plaintiff's spine revealed some abnormalities, and plaintiff reported subjective pain and limitation related to his

conditions, on examinations he was generally observed to be comfortable, with normal muscle tone, normal gait, normal range of motion (including in the neck, shoulder and spine), normal reflexes, normal pulmonary findings, intact neurologic findings, and the ability to change position without difficulty. The ALJ also cited treatment records from plaintiff's primary care provider noting there were no underlying identifiable medical conditions causing his symptoms. The ALJ further cited records noting plaintiff's symptoms improved with treatment and weight loss. (Tr. at 20.)

Plaintiff reported using a cane or walker/shopping cart for ambulation, but the ALJ declined to include a limitation for use of an assistive device, noting that on examinations plaintiff was regularly observed with normal gait and to be without an assistive device. (Tr. at 20.) Further, the record contained no evidence that a medical provider prescribed the use of a cane. The ALJ accommodated any limitation plaintiff may have walking and/or standing by restricting him to standing/walking four hours in a workday. The ALJ concluded that plaintiff's overall good objective physical examination findings during evaluations and improvement of symptoms with treatment suggested he was not as limited as alleged and remained capable of performing work within the RFC. (Tr. at 21.)

The ALJ noted that the record also documented activities showing better functioning than plaintiff alleged. For instance, the record reflected that plaintiff was able to prepare some meals, do some housework, drive at times, shop with a cart as a walker, manage his money, watch television, handle his own medical care, and attend medical appointments. He was also able to do pool stretching and light activity on his own, unguided by a therapist. (Tr. at 21.)

Turning to the medical opinions, the ALJ noted that under the applicable regulations he could not defer or give any specific evidentiary weight, including controlling weight, to any

opinion. The ALJ first addressed the opinions of the agency medical consultants, finding them somewhat persuasive. The consultants opined that plaintiff could perform light work except he would be limited to standing and/or walking four hours in a workday, with occasional climbing of ramps or stairs, occasional climbing of ladders, ropes or scaffolds, and occasional balancing, stooping, kneeling, crouching and crawling. The ALJ found a limitation to light level work with reduced standing and walking and additional postural limitations supported by the overall record, which showed reasonably good physical functioning and physical examination findings. However, the ALJ found additional environmental and manipulative limitations warranted based on the hearing-level evidence, including plaintiff's testimony related to his fatigue, pain, and manipulative issues. (Tr. at 21.)

The ALJ deemed persuasive the opinions of the agency psychological consultants, who found no more than mild mental limitations. (Tr. at 21-22.) The ALJ found their conclusions supported by and consistent with the lack of mental health treatment and overall good mental status examination findings in the record, e.g., normal judgment, normal attention, normal mood and affect, normal behavior, normal thought content, and intact memory. (Tr. at 22.)

The ALJ next considered the August 2021 and July 2024 opinions of plaintiff's primary care provider, Kurt M. Bloomhuff, M.D. In August 2021, Dr. Bloomhuff indicated in treatment notes that plaintiff had a variety of symptoms that did not seem to connect to any specific medical condition. Dr. Bloomhuff noted he would be checking labs to rule out some conditions and, if normal, it was likely plaintiff needed psychiatric treatment. Dr. Bloomhuff concluded that he saw no reason why plaintiff should be on medical disability. In July 2024, Dr. Bloomhuff confirmed this opinion, indicating plaintiff had no underlying identifiable medical condition causing his symptoms and suspecting there was a significant psychiatric component. The ALJ

found these opinions not persuasive as they were conclusory and did not include a function-by-function assessment of plaintiff's abilities. Moreover, the records supported a finding that plaintiff's physical conditions limited him to a range of light level work. (Tr. at 22.)

Finally, the ALJ considered the August 2024 opinion of the functional capacity examiner, Cooper Witt, PT, DPT. Mr. Witt indicated plaintiff had not been working so the results of the examination should be interpreted in regard to daily function as that was the only available comparison. Mr. Witt noted plaintiff demonstrated severe functional limitations across all testing, with the exception of sitting. All other functional testing was limited to some degree because of pain and its effects on plaintiff's physical function. Witt also noted plaintiff's general movement speed tended to decrease and balance worsened as pain increased during testing. The ALJ found this opinion not persuasive as it was a one-time evaluation, and Mr. Witt specifically noted it should not be interpreted for work-related functioning. Moreover, plaintiff's reported pain limited all functional testing, and the overall findings were extreme as compared to the totality of the evidence at the hearing level, which supported greater physical functioning. (Tr. at 22.)

At step four, the ALJ found that plaintiff had no past relevant work. Finally, at step five the ALJ determined that plaintiff could do other jobs, as identified by the VE, including fastener, order caller, and small products assembler. (Tr. at 23.) He accordingly found plaintiff not disabled. (Tr. at 24.)

**D. Appeals Council Review**

Plaintiff requested review by the Appeals Council, but on July 3, 2025, the Council denied plaintiff's request. (Tr. at 1.) The Council acknowledged the additional evidence plaintiff submitted but concluded that it did not show a reasonable probability that it would change the

outcome. (Tr. at 2.) Based on the Council's denial, the ALJ's decision became the final decision of the Commissioner of Social Security for purposes of judicial review. See Wilder v. Kijakazi, 22 F.4th 644, 650 (7th Cir. 2022).

**E. Judicial Review**

On September 5, 2025, plaintiff, by counsel, filed the instant action for judicial review. (R. 1.) However, counsel soon moved to withdraw (R. 6), indicating his engagement with plaintiff was expressly limited to the filing of the case and assistance in locating a replacement attorney to continue the appeal. (R. 6.) Plaintiff did not oppose the motion, which I granted. (R. 7.) I advised plaintiff that, unless and until successor counsel appeared on his behalf, he was responsible for filing briefs in accordance with the court's briefing schedule, pursuant to which his opening brief was due by December 8, 2025. Consistent with the court's schedule, the Commissioner filed the administrative record on November 3, 2025. (R. 9.) Plaintiff did not file a brief within the time allotted, and I issued an order directing him to file a brief by January 12, 2026, or face dismissal of the action for failure to prosecute. (R. 10.) On January 9, 2025, plaintiff filed a pro se brief. (R. 11.)

Following extensions, the Commissioner filed a response brief on March 25, 2026. (R. 19.) On May 5, 2026, plaintiff moved for a 30-day extension on his reply brief from the date he received the administrative record. (R. 21.) On review of the docket, it appeared the Commissioner had served the record on plaintiff's prior attorney; I accordingly ordered the Commissioner serve plaintiff with a certified copy of the transcript of the administrative proceedings on or before June 5, 2026. I further extended the deadline for plaintiff's reply brief to July 6, 2026. (R. 22.) On May 12, 2026, the Commissioner filed a certificate of service of the record on plaintiff. (R. 23.) Plaintiff filed his reply brief on July 8, 2026. (R. 25.) Confusingly,

plaintiff stated in the reply that he did not receive the hearing transcript as ordered, but that he did receive the case file by mail. (R. 25 at 1.) On July 29, 2026, I issued an order advising plaintiff that the hearing transcript was contained within the administrative record at pages 30-58. To ensure he was provided every opportunity to make his case, I afforded plaintiff until August 5, 2026, to file a supplemental brief setting forth any additional arguments based on the hearing transcript. I also indicated that, if plaintiff's copy of the record omitted these pages, he should so advise the court by that same date. Plaintiff has filed nothing further.

## II. STANDARD OF REVIEW

The court applies a very deferential standard of review to an ALJ's decision. Thorpe v. Bisignano, 148 F.4th 432, 436 (7th Cir. 2025). The court will reverse an ALJ's decision only if it is the result of an error of law or it is not supported by substantial evidence, which means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. When reviewing a disability decision for substantial evidence, the court will not re-weigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination. Warnell v. O'Malley, 97 F.4th 1050, 1052-53 (7th Cir. 2024). Even if reasonable minds could differ concerning whether the claimant is disabled, the court must nevertheless affirm the ALJ's decision if adequately supported. Jarnutowski v. Kijakazi, 48 F.4th 769, 773 (7th Cir. 2022). Finally, while the ALJ must provide a logical bridge from the evidence to his conclusions, Warnell, 97 F.4th at 1054, this articulation requirement is minimal. "An ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." Id. at 1053.

## III. DISCUSSION

Plaintiff presents a variety of complaints about the proceedings before the agency and generally argues the ALJ should have found him disabled. However, the reviewing court does not focus on whether the claimant "was disabled during the relevant period, but instead on whether the ALJ's findings were supported by substantial evidence." Estok v. Apfel, 152 F.3d 636, 638 (7th Cir. 1998). And in an action for judicial review, it is not enough for a claimant to simply "criticize the ALJ's decision about [his] functional capacity to work. [He] must point to evidence compelling the conclusion that the adverse disability decision lacks substantial support in the record." See Morales v. O'Malley, 103 F.4th 469, 470 (7th Cir. 2024). Plaintiff proceeds pro se, which requires me to construe his filings liberally, but even unrepresented litigants must present cogent legal arguments with citations to authority and relevant parts of the record. Greenwell v. Saul, 811 Fed. Appx. 368, 370 (7th Cir. 2020) (citing Anderson v. Hardman, 241 F.3d 544, 545 (7th Cir. 2001)); see also Crespo v. Colvin, 824 F.3d 667, 674 (7th Cir. 2016) (noting that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived). Plaintiff fails to do so here.

For the sake of completeness, I have reviewed the ALJ's decision and find it supported by substantial evidence and free of harmful legal error. The ALJ followed the five-step sequential evaluation process for determining disability. (Tr. at 13-14.) In determining plaintiff's capacity for work, the ALJ considered the entire record, including the treatment notes, the medical opinions, and plaintiff's statements concerning his symptoms, consistent with the regulations governing evaluation of such evidence. (Tr. at 18.) The ALJ supported his conclusions with objective medical evidence (Tr. at 19), examination findings (Tr. at 20), and the opinions of the agency medical and psychological consultants (Tr. at 21-22). The ALJ noted

that plaintiff's primary care physician, Dr. Bloomhuff, opined in August 2021 and again in July 2024 that plaintiff had no underlying identifiable medical condition causing the severe symptoms he alleged. (Tr. at 20, 580, 1531.) Nevertheless, despite plaintiff's own doctor stating he saw no reason why plaintiff should be on medical disability (Tr. at 22, 580), the ALJ partially credited plaintiff's claims and limited him to a reduced range of light work, a finding more restrictive than recommended by the agency medical consultants. See Burmester v. Berryhill, 920 F.3d 507, 510 (7th Cir. 2019) ("This finding was more limiting than that of any state agency doctor or psychologist, illustrating reasoned consideration given to the evidence [plaintiff] presented."). Finally, the ALJ considered the August 2024 FCE plaintiff submitted, providing several reasons for finding it unpersuasive. (Tr. at 22.)

None of plaintiff's complaints support remand. Plaintiff states the Appeals Council refused to add the additional documents he sent and declined to even review the material. (Pl.'s Br. at 1.) The record refutes this contention; as indicated above, the Council acknowledged the records plaintiff submitted but concluded that they provided no basis for changing the ALJ's decision. (Tr. at 2.) Plaintiff makes no argument that the Council legally erred in declining review. See Musonera v. Saul, 410 F. Supp. 3d 1055, 1058-59 (E.D. Wis. 2019) (discussing the limited circumstances under which the court can review the Council's denial of review).[2]

---

[2]Plaintiff does not in his main brief discuss the significance of the additional evidence he submitted, which is in the record before this court. Because this evidence was not presented to the ALJ, it cannot now be used to determine the correctness of the ALJ's decision. Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995). In any event, review of this evidence reveals no basis for remand. The new evidence consists primarily of four medical source statements, all of which post-date the ALJ's decision: a February 12, 2025, RFC questionnaire from Dr. Bloomhuff indicating plaintiff had multiple joint complaints, fibromyalgia, and chronic fatigue, but declining to offer any opinions on plaintiff's functional abilities and instead referring to the

Plaintiff complains about the delays in processing his claim. (Pl.'s Br. at 2.) Such delays are unfortunate, but plaintiff does not explain how they provide a basis for overturning the ALJ's decision. See Hawrelak v. Colvin, 667 Fed. Appx. 161, 163 (7th Cir. 2016) ("We have considered the remainder of Hawrelak's arguments—which mostly involve complaints about various procedural missteps that delayed the processing of his case—and none provides a basis for overturning the ALJ's decision."). Plaintiff notes his date last insured of December 31, 2024 (Pl.'s Br. at 2), but no delay in adjudicating his claim would have precluded benefits so long as he established disability commencing between the alleged onset date and the date last insured.

Plaintiff indicates that at the start of the hearing he was distressed because he initially went to the wrong location and tired from the walk from the parking lot to the hearing room. (Pl.'s Br. at 1-2.) However, the ALJ gave him time to rest and recover (Pl.'s Br. at 2), and nothing in the hearing transcript suggests plaintiff was too distraught to participate. To the contrary, plaintiff indicated that he wished to proceed at that time (Tr. at 35), and he appeared to respond to the ALJ's questions appropriately. Plaintiff fails to demonstrate anything in the

---

FCE (Tr. at 180); a February 13, 2025, fibromyalgia medical source statement from Dr. Eric Gowing indicating plaintiff met the criteria for fibromyalgia (Tr. at 188) and also had thoracic back pain and adrenal insufficiency (Tr. at 189), but declining to rate plaintiff's abilities and instead referring to the FCE (Tr. at 190); a February 13, 2025, auto-immune disorder medical assessment form from Dr. Gowing listing the same impairments (fibromyalgia, thoracic back pain, and adrenal insufficiency) (Tr. at 193) but again declining to rate plaintiff's abilities (Tr. at 194-96); and a February 18, 2025, pain medical source statement from Dr. Paul Hoell, indicating plaintiff experienced chronic pain and was unable to get out of bed (Tr. at 199-201) but also declining to rate plaintiff's functional abilities (Tr. at 200-02). The ALJ considered the impairments mentioned in these reports, as well as the FCE to which they deferred; Drs. Bloomhuff, Gowing, and Hoell declined to offer any opinions of their own regarding plaintiff's functional abilities. There is no reasonable probability the Commissioner would have reached a different conclusion had this evidence been considered.

ALJ's conduct of the hearing supporting remand.

Plaintiff states that the ALJ is not a doctor and should not have relied on his personal opinions. (Pl.'s Br. at 1, 3.) As summarized above, the ALJ based his decision on a review of the treatment records, the medical opinions, and the testimony. While ALJs must resist the temptation to "play doctor" and make their own independent medical findings, they are permitted, indeed required, to weigh the evidence in deciding whether a claimant is disabled. See Seamon v. Astrue, 364 Fed. Appx. 243, 247 (7th Cir. 2010) ("An ALJ may not 'play doctor' by substituting his opinion for that of a physician. The ALJ, however, is not only allowed to, but indeed must, weigh the evidence and make appropriate inferences from the record.") (internal citation omitted); see also Thomas v. Colvin, 745 F.3d 802, 808 (7th Cir. 2014) ("RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide."). Plaintiff identifies no specific portion of the ALJ's decision crossing this line.

Plaintiff indicates that the ALJ incorrectly advised the VE he could work fours; plaintiff contends he cannot work five minutes, let alone four continuous hours, citing the medical records and FCE report from Cooper Witt.[3] (Pl.'s Br. at 2; see also Pl.'s Br. at 4, arguing the ALJ propounded a hypothetical to the VE that did not apply to him.) The ALJ asked the VE a hypothetical question containing all the limitations he found supported by the record. See Reynolds v. Kijakazi, 25 F.4th 470, 473 (7th Cir. 2022) ("Crucially, however, an ALJ need only include limitations that are supported by the medical record."); Schmidt v. Astrue, 496 F.3d 833, 846 (7th Cir. 2007) ("[T]he ALJ is required only to incorporate into his hypotheticals those impairments and limitations that he accepts as credible."). The ALJ considered and discounted

---

[3]To be clear, the ALJ found that plaintiff could sustain full-time work, standing/walking four hours in an eight-hour workday.

the FCE report, and he thoroughly reviewed the other medical evidence. Plaintiff points to no important evidence the ALJ overlooked or which compels a different RFC.[4]

Plaintiff argues that he should be found disabled based on a functional capacity of less than five minutes as indicated in the FCE report. (Pl.'s Br. at 2.) The ALJ discounted the FCE report, finding that plaintiff could sustain a range of light work on a full-time basis. Plaintiff argues the FCE performed by Witt proved the ALJ was incorrect; Witt observed his abilities and provided a report the ALJ ignored. (Pl.'s Br. at 3.) But the ALJ did not ignore the FCE report. He summarized the report before finding its conclusions unpersuasive because it was a one-time evaluation, which was not to be interpreted for work-related functioning; plaintiff's subjective reports of pain, which the ALJ found inconsistent with the record, limited the functional testing; and the overall findings were extreme as compared to the totality of the evidence, which demonstrated greater physical functioning. (Tr. at 22.) Plaintiff addresses none of these reasons. See Morales, 103 F.4th at 471 ("Morales must demonstrate with references to evidence why the ALJ's determinations lack substantial support in the administrative record. We cannot do that work for her."). Mere disagreement with the manner in which the ALJ weighed an opinion does not support remand. Pufahl v. O'Malley, No. 23-C-612, 2024 U.S. Dist. LEXIS 34240, at *80 (E.D. Wis. Feb. 9, 2024), aff'd sub nom., Pufahl v. Bisignano,142 F.4th 446 (7th Cir. 2025); see also Grotts v. Kijakazi, 27 F.4th 1273, 1278 (7th Cir. 2022) ("[W]e do not review medical opinions independently but rather review the ALJ's weighing of those

[4]Plaintiff appears to reference the VE's testimony that certain jobs contained in the Dictionary of Occupational Titles (DOT) no longer exist (Pl.'s Br. at 4; Tr. at 54), but this was in response to the ALJ's question about unskilled, sedentary work. The ALJ did not rely on the VE's response to that question. See Gribben v. Kijakazi, No. 21-1987, 2022 U.S. App. LEXIS 421, at *6 (7th Cir. Jan. 6, 2022) (holding that the ALJ need not discuss VE testimony given in response to a hypothetical that does not match the final RFC).

opinions for substantial evidence, and we only overturn that weighing if no reasonable mind could accept the ALJ's conclusion. Grotts wants us to weigh Dr. Cremerius's opinion ourselves, but this would be no less than substituting our judgment for that of the ALJ's, an impermissible step.").

Plaintiff argues the ALJ omitted various impairments at step two. (Pl.'s Br. at 2-3.) The ALJ considered several of these conditions, e.g., chronic sinusitis, hypogonadism, adrenal insufficiency (cortisol deficiency), finding them non-severe. (Tr. at 15.) The ALJ also considered plaintiff's alleged mental impairments, finding them non-severe under the broad functional areas of mental functioning. (Tr. at 15-16.) More importantly, plaintiff fails to explain how the omission of any of these impairments at step two resulted in a flawed RFC. See Ray v. Berryhill, 915 F.3d 486, 492 (7th Cir. 2019) ("Step two is merely a threshold inquiry; so long as one of a claimant's limitations is found to be severe, error at that step is harmless."); Curvin v. Colvin, 778 F.3d 645, 649 (7th Cir. 2015) ("[E]ven if there were such an error at step 2, it would have been harmless because the ALJ properly considered all of Curvin's severe and non-severe impairments, the objective medical evidence, her symptoms, and her credibility when determining her RFC immediately after step 3."). The mere existence of such diagnoses does not mean plaintiff experienced further limitations. See Richards v. Berryhill, 743 Fed. Appx. 26, 30 (7th Cir. 2018) ("[P]ointing to various diagnoses . . . and saying that they might hinder Richards is insufficient to establish the existence of a functional limitation.").

Plaintiff asserts that during the relevant period he was homebound and assisted by others with shopping and household chores. (Pl.'s Br. at 3.) The ALJ considered plaintiff's statements about the severity and limiting effects of his impairments, finding them inconsistent with the evidence of record. Plaintiff fails to demonstrate this finding was patently wrong. See

Pufahl, 142 F.4th at 458 ("We will overturn the ALJ's evaluation of a claimant's subjective symptoms only if it is patently wrong, which means that the decision lacks any explanation or support.") (cleaned up).

Plaintiff notes that his conditions have been difficult to diagnose and treat, that he has pursued all prescribed treatment, and that while he may be able to function for brief periods he cannot sustain full-time work. (Pl.'s Br. at 4.) The ALJ evaluated the medical evidence of record, including the various treatment modalities attempted; plaintiff identifies no important evidence the ALJ overlooked or which compels a different RFC.

Plaintiff complains that the ALJ had a fundamental misunderstanding of his disabilities (Pl.'s Br. at 3), but he points to no portion of the decision reflecting such misunderstanding. Plaintiff discusses fibromyalgia, including the symptoms it may cause, the treatment generally recommended, and the standards for establishing disability based on this impairment. (Pl.'s Br. at 4-6, citing SSR 12-2p.) The ALJ found plaintiff's fibromyalgia to be a severe impairment (Tr. at 15), considering the condition under the standards set forth in SSR 12-2p (Tr. at 17). Plaintiff demonstrates no error.

Plaintiff suggests that the agency should have purchased a consultative examination (Pl.'s Br. at 6), but whether to collect additional evidence is a matter within the ALJ's discretion and is required only when the record is insufficient to determine whether the claimant is disabled. Jirau v. Astrue, 715 F. Supp. 2d 814, 826 (N.D. Ill. 2010) (citing Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004)); see also Bertaud v. O'Malley, 88 F.4th 1242, 1245-46 (7th Cir. 2023) ("[O]nce the ALJ reasonably decides that further development of key issues is not necessary, the ALJ's decision to go no further is not a breach of duty.") (internal quote marks omitted); Kendrick v. Shalala, 998 F.2d 455, 458 (7th Cir. 1993) ("When reviewing proceedings

conducted by others, district judges must respect the authority of administrative officials to decide how much is enough."). The record here contained sufficient evidence, including the treatment notes from plaintiff's rheumatologist Dr. Gowing, for the ALJ to evaluate plaintiff's fibromyalgia and other impairments. Plaintiff fails to show the ALJ erred by not ordering another exam.

Finally, in his main brief plaintiff states that he was unable to obtain the case file. (Pl.'s Br. at 7.) As indicated above, I ensured that the Commissioner sent plaintiff a copy of the administrative record and afforded plaintiff additional time to file a reply brief after his receipt of the record.

Nothing in the reply brief demonstrates error. Plaintiff contends the ALJ took Dr. Bloomhuff's 2021 statement out of context. (Pl.'s Rep. Br. at 1, citing Tr. at 975.) However, he does not elaborate on the claim, does not discuss the doctor's 2024 statement to similar effect, and does not acknowledge the ALJ's decision to find him significantly limited despite Dr. Bloomhuff's skepticism.

Plaintiff complains that the agency used records from 2018 or 2019, prior to his alleged onset date, rather than the current functional test. (Pl.'s Rep. Br. at 1, citing Tr. 1459.) The claim is again undeveloped. It is true the ALJ discussed MRIs from 2018, but he acknowledged those scans were completed prior to the relevant period, and he also discussed the scans from 2023 and 2024. (Tr. at 19.) It is unclear how the ALJ erred in this regard.

Plaintiff cites the 2025 reports from Dr. Gowing, which referred to the FCE, and the 2025 report from Dr. Hoell indicating plaintiff was unable to get out of bed except to use the bathroom. (Pl.'s Rep. Br. at 1, citing Tr. at 188-96, 198-203.) As indicated above, these reports were not before the ALJ, so he cannot be faulted for failing to consider them. See Eads v.

Sec'y of Health & Human Servs., 983 F.2d 815, 817 (7th Cir. 1993) ("The correctness of [the ALJ's] decision depends on the evidence that was before him. He cannot be faulted for having failed to weigh evidence never presented to him[.]") (internal citations omitted). Further, as also discussed above, the ALJ considered and discounted the FCE to which these reports deferred; the doctors otherwise declined to opine on plaintiff's functioning.

Plaintiff again argues in reply that the ALJ should have asked the VE a hypothetical based on Witt's FCE report, but as discussed above the ALJ need only include limitations that are supported by the medical record; the ALJ found the FCE unpersuasive, based on reasons plaintiff has not challenged. Plaintiff also contends the ALJ should have relied on his function reports. (Pl.'s Rep. Br. at 1, citing Tr. at 380-89, 364-71.) The ALJ considered these reports (Tr. at 18), but found that plaintiff's statements could not reasonably be accepted as consistent with the evidence of record (Tr. at 20). Plaintiff makes no attempt to show this finding was patently wrong.

Plaintiff contends that his impairments met or equaled various Listings. (Pl.'s Rep. Br. at 2-4.) However, he does not discuss the specific criteria of these Listings or explain how the evidence satisfies them. See Filus v. Astrue, 694 F.3d 863, 868 (7th Cir. 2012) ("Filus had the burden of establishing that he met all of the requirements of a listed impairment[.]"); Maggard v. Apfel, 167 F.3d 376, 380 (7th Cir. 1999) ("The claimant bears the burden of proving his condition meets or equals a listed impairment.").

Plaintiff asserts that the post office lost certain documents he sent to the Appeals Council. (Pl.'s Rep. Br. at 3.) However, he does not identify those documents. As indicated above, he does not claim the Council erred in denying review, despite the new information he furnished. Nor does he seek a sentence six remand for consideration of new evidence. See

McCurrie v. Astrue, 401 Fed. Appx. 145, 150-51 (7th Cir. 2010).

Finally, plaintiff contends that the hearing transcript has not been provided to him, and that the ALJ added fictional information to the record in the hearing. (Pl.'s Rep. Br. at 3.) As discussed above, I informed plaintiff of the portion of the record containing the hearing transcript and gave him additional time to make further argument with citations to the record (or advise the court if his copy of the record was missing these pages). He has filed nothing further. Plaintiff states that the ALJ should have ordered another medical examination because the ALJ added fictional functional capacity to the record indicating plaintiff was able to stand for four hours. (Pl.'s Rep. Br. at 3.) The ALJ derived the four-hour standing/walking limitation from the agency medical consultants' reports, which were prepared before the ALJ got the case (Tr. at 211, 232); the ALJ added no "fictional" assessments to the record.

## IV. CONCLUSION

**THEREFORE, IT IS ORDERED** that the ALJ's decision is affirmed, and this case is dismissed. The clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 11th day of August, 2026.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge